**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**OCALA DIVISION**

MICHAEL JOHNSON and
KARLA JOHNSON,

    Plaintiffs,

v.                                            Case No:  5:15-cv-85-Oc-30PRL

THOR MOTOR COACH, INC., a
foreign profit corporation,

    Defendant.
_____/

# ORDER

    THIS CAUSE comes before the Court upon (1) Defendant Thor Motor Coach, Inc.'s ("Thor") Motion to Exclude Opinion Testimony of Plaintiffs' Putative Expert, Richard Falco (Doc. 18), Plaintiffs Michael and Karla Johnson (the "Johnsons") response in opposition (Doc. 31), and Thor's reply (Doc. 38); and (2) Thor's Motion for Summary Final Judgment (Doc. 20), the Johnsons' response in opposition (Doc. 34), and Thor's reply (Doc. 38).  The Court having reviewed the motions, responses, reply, and other relevant documents, and being otherwise fully advised in the premises, concludes that Thor's motion to exclude should be denied and Thor's motion for summary judgment should be granted in part and denied in part.

**UNDISPUTED FACTS**

The Johnsons bought a 2013 Palazzo recreational vehicle on January 23, 2013, from Lazy Days in Seffner, Florida (the "RV"). (Doc. 1, Ex. A). Thor manufactured the "house" portion of the RV and issued a limited warranty, which provided repair-only coverage for defects in Thor materials or workmanship reported in the Johnsons' first twelve months of ownership or from January 23, 2013, until January 24, 2014. (Doc. 1, Ex. B). From January 23, 2013, until the expiration of the warranty, the Johnsons had two repairs performed to the driver's side slide-out room,[1] which included repairs made on March 20, 2013, and June 24, 2013. After the warranty expired, Thor also provided two "goodwill" repairs to the slide-out room, which included repairs made on April 30, 2014, and August 11, 2014. The Johnsons did not have further issues with the slide-out room until June 2015 when the slide-out room started making a grinding noise.

On January 22, 2015, the Johnsons initiated this action against Thor based on Thor's alleged failure to repair defects in material or workmanship to the driver's side slide-out room under the limited warranty, asserting claims for breach of express warranty under the Magnuson-Moss Warranty Enforcement Act ("MMWA"), 15 U.S.C. § 2310(d)(1), and the Florida Motor Vehicle Warranty Enforcement Act, Fla. Stat. §§ 681.10-.118, more commonly referred to as Florida's "Lemon Law." The Johnsons seek to recover the difference in value of the vehicle as promised and as actually delivered.

---

[1] A slide-out room is a feature which expands the square footage of the interior living portion of a recreational vehicle when the recreational vehicle is parked for camping. (Doc. 18 at 2).

**MOTION TO EXCLUDE EXPERT TESTIMONY OF RICHARD FALCO**

The Johnsons seek to offer an expert opinion from mechanic Richard Falco regarding whether their RV suffers from a manufacturing defect with respect to the slide-out room. Thor seeks to have Falco's opinion excluded under Federal Rule of Evidence 702 on the ground that Falco is not qualified to offer such an opinion because he has no knowledge, training, or expertise with respect to recreational vehicles or slide-out rooms. (Doc. 18). Thor also argues that Falco's opinion is unreliable under Rule 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

**1. Standard**

Federal Rule of Evidence 702, which governs the admissibility of expert testimony, provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

"'[T]he task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand' is assigned to the district court." *United Fire & Cas. Co. v. Whirlpool Corp.*, 704 F.3d 1338, 1341 (11th Cir. 2013) (quoting *Daubert*, 509 U.S. at 597).

In *Rink v. Cheminova, Inc.*, 400 F.3d 1286 (11th Cir. 2005), the Eleventh Circuit explained:

> To fulfil their obligation under *Daubert*, district courts must engage in a rigorous inquiry to determine whether: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology

>by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. The party offering the expert has the burden of satisfying each of these three elements by a preponderance of the evidence.

*Id.* at 1291-92 (internal quotation marks omitted).

In assessing the reliability of a scientific expert's testimony, district courts should consider the following four factors: (1) whether the expert's methodology has been tested or is capable of being tested; (2) whether the theory or technique used by the expert has been subjected to peer review and publication; (3) whether there is a known or potential error rate of the methodology; and (4) whether the technique has been generally accepted in the relevant scientific community. *United Fire & Cas. Co.*, 704 F.3d at 1341 (citing *Daubert*, 509 U.S. at 593-94). "At the same time, the [Supreme] Court has emphasized that these factors are not exhaustive and are intended to be applied in a 'flexible' manner." *Id.* (quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999)).

Falco is a mechanic. With respect to experts with technical rather than scientific knowledge the Supreme Court in *Kumho Tire* concluded that:

>*Daubert*'s general holding—setting forth the trial judge's general "gatekeeping" obligation—applies not only to testimony based on "scientific" knowledge, but also to testimony based on "technical" and "other specialized" knowledge. *See* Fed. Rule Evid. 702. We also conclude that a trial court *may* consider one or more of the more specific factors that *Daubert* mentioned when doing so will help determine that testimony's reliability. But, as the Court stated in *Daubert*, the test of reliability is "flexible," and *Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case. Rather, the law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination.

4

526 U.S. at 141-42.

The objective of *Daubert*'s gatekeeping requirement is to ensure "that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152. *Daubert* also reminds litigants that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." 509 U.S. at 596.

**2. Analysis**

Falco graduated high school in 1963, and has some college education, but no college degree. (Doc. 19, Falco Depo. Ex. 2). He worked as an automotive technician for several years before joining the United States Army as a mechanic. Falco eventually opened his own automotive shop in New Jersey and taught several courses on mechanics. He has an Automotive Service Excellence Certification as to engine repair, suspension and steering, brakes, electrical and electronic systems, and engine performance. He occasionally takes courses and seminars in automotive technology, but he has never taken a course specifically about recreational vehicles. (*Id.*, Ex. 1 at 7). His current work primarily consists of Lemon Law inspections, automobile appraisals, and classic car restoration. (*Id.*, Ex. 1 at 8).

Falco does not have any certifications or qualifications specific to recreational vehicles. (*Id.*, Ex. 1 at 7). He has inspected approximately four or five recreational vehicles for defects and has performed some repairs to and appraisals of recreational vehicles when

he owned his own shop, but he has never performed a repair on a slide-out room. (*Id.*, Ex. 1 at 11, 15, 23). He has never been qualified or testified as an expert regarding recreational vehicles. (*Id.*, Ex. 1 at 73).

In inspecting the RV on August 18, 2015, Falco made a two-hour visual and aural inspection of the RV, during which he observed wear on the bottom track of the slide-out room and heard the gear slipping. (*Id.*, Ex. 1 at 43, 53-54, 65, 68, 87). He also observed a gap on the inside of the RV between the slide-out room molding and the wall. (*Id.*, Ex. 1 at 55-56). He did not use any tools when inspecting the slide-out room beyond a tape measure. (*Id.*, Ex. 1 at 40). While he consulted an internet forum, he did not rely on recreational vehicle repair or service manuals in performing his inspection or forming his opinion. (*Id.*, Ex. 1 at 29, 34, 132). He did not consult any recreational vehicle industry regulations, standards, treatises, or authority, and his opinion is not based on such. (*Id.*, Ex. 1 at 76).

Falco concluded that the RV's slide-out room gear mechanism was defective because it was not capable of operating to factory specifications and the slide-out room was too heavy for the gear mechanism. (*Id.*, Ex. 2). He based his opinion on the wear to the track, the skipping noise he heard when the slide-out room was being operated, and a comparison to the smaller slide-out room in the same RV. He also took into consideration the past repairs performed to the slide-out room by Thor.

Thor first contends that Falco is not competent to offer an opinion as to any defect in the Johnsons' RV. (Doc. 18 at 6-10). Namely, Thor highlights Falco's lack of recreational vehicle and slide-out room experience. The Court disagrees. Falco, as a

mechanic, could be competent to offer an opinion as to a defect in the RV, depending on the nature of the defect and the basis of his opinion. The Court, therefore, concludes that Falco is qualified to opine as to the mechanical condition of the RV.

Thor next contends that Falco's opinion as to the defective condition of the slide-out room is unreliable. (*Id.* at 10-18). Although it is a close call, the Court concludes that Falco's opinion is not unreliable. Falco visually inspected the slide-out room and observed abnormal wear to the bottom track and that the slide-out room did not extend evenly or to its full potential. He also heard the gear mechanism slipping as though the teeth of the gear were not gripping the track. Falco also observed that the smaller slide-out room in the rear of the RV functioned appropriately. On the basis of his visual and aural inspection, the RV's repair history, the RV's low mileage, and his automotive repair experience, in which he became familiar with gears, Falco concluded that the slide-out room suffered from a manufacturing defect and that the slide-out room was too heavy for the tracks.

A mechanic's visual inspection may be an acceptable way to identify a defect. In fact, Thor's experts, Enoch Hutchcraft and Mark Stanley, performed visual inspections to determine whether the slide-out room suffered from a defect. Falco was also familiar with the repair history of the RV and the general principles of mechanics, which would include the proper functioning of gears and tracks. Thor takes issue with Falco's lack of credentials specific to RVs and slide-out rooms, but RV specific credentials are not necessary to apply basic principles of mechanics. The Court reminds Thor that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden

of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

Because Falco is both qualified to offer an opinion as to the mechanical condition of the slide-out room and his opinion is reliable, Thor's motion to exclude should be denied.

## SUMMARY JUDGMENT

Thor moves for summary judgment on both of the Johnsons' claims. (Doc. 20). First, Thor argues that it is entitled to summary judgment on the Johnsons' MMWA claim because the Johnsons have presented no expert proof that a manufacturing defect exists or that if such defect does exist, the extent of their damages. Second, Thor contends that it is entitled to summary judgment on the Johnsons' Lemon Law claim because Florida's Lemon Law does not apply to the "living facilities" of a recreational vehicle and living facilities encompass the slide-out room.

**1. Standard**

Motions for summary judgment should be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (internal quotation marks omitted); Fed. R. Civ. P. 56(c). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id.* Throughout this

analysis, the court must examine the evidence in the light most favorable to the nonmovant and draw all justifiable inferences in its favor. *Id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. The evidence must be significantly probative to support the claims. *Anderson*, 477 U.S. at 248-49.

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *Hoffman v. Allied Corp.*, 912 F.2d 1379, 1383 (11th Cir.1990). However, there must exist a conflict in substantial evidence to pose a jury question. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

**2. Analysis**

    **A. MMWA Claim**

The MMWA, 15 U.S.C. § 2310(d), is a federal warranty enforcement statute. It does not create any warranties or require a manufacturer to provide warranties for its products. However, if a manufacturer does issue a warranty, the MMWA requires that it

honor the terms of that warranty or the customer may file a claim for breach of warranty in conjunction with the MMWA. A claim under the MMWA is dependent upon having a viable underlying state breach of warranty claim. *Burns v. Winnebago Indus., Inc.*, No. 8:11-cv-354-T-24-TBM, 2012 WL 171088, at *4 (M.D. Fla. Jan. 20, 2012). To establish a breach of limited warranty claim under Florida law, a plaintiff must demonstrate: "(1) a covered defect existed in the product at the time of sale; (2) notice of the defect was given within a reasonable time after the defect was discovered; and (3) [the d]efendant was unable to repair the defect." *Id.* at *3.

### i. Evidence of Defect

Thor first contends that the Johnsons cannot establish the existence of an unrepaired defect without expert testimony. (Doc. 20 at 16-17). Thor's contention, however, is premised upon the exclusion of Falco's opinion. Since the Court concluded that Falco's opinion should not be excluded, the Johnson's do have expert testimony as to an unrepaired defect, and Thor is not entitled to summary judgment on this ground.

Thor also contends that the affidavits of its experts, Enoch Hutchcraft and Mark Stanley, demonstrate that the Johnsons' RV does not suffer from an unrepaired manufacturing defect. (Doc. 20 at 21). Because Falco opines otherwise, however, a genuine issue of material fact exists as to whether the RV is defective, and Thor is not entitled to summary judgment on the opinions of its experts.

### ii. Evidence of Damages

Thor next contends that it is entitled to summary judgment on the Johnson's MMWA claim because the Johnsons have not submitted any expert proof as to the extent

10

of their damages. (Doc. 20 at 16-21). But the Johnsons contend that they can testify as to the extent of their damages. Because the MMWA is "virtually silent" as to measuring damages, the Court must look to Florida law to determine the Johnsons' damages. *Boyd v. Homes of Legend, Inc.*, 188 F.3d 1294, 1298-99 (11th Cir. 1999) (internal quotation marks omitted). Under Florida law, "[t]he measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted." Fla. Stat. § 672.714(2). Thus, the proper measure of damages in the present case is the difference between the purchase price of a non-defective RV on January 23, 2013, less the value of a defective RV on January 23, 2013.

As noted in *Chmura v. Monaco Coach Corp.*, No. 8:04-cv-2054-T-24MAP, 2006 WL 709325, at *4 (M.D. Fla. Mar. 20, 2006), under Florida law, "an owner of property can be qualified to state his opinion as to the value of his property." *Accord Sparger v. Newmar Corp.*, No. 12-81347-CIV, 2014 WL 3928556, at *6 (S.D. Fla. Aug. 12, 2014); *Ames v. Winnebago Indus., Inc.*, No. 5:04-CV-359OC10GRJ, 2005 WL 2614614, at *3 (M.D. Fla. Oct. 14, 2005). The Johnsons need not be experts to offer this testimony, they need only be familiar with the characteristics of the property, have knowledge or acquaintance with its uses and purposes, and experience in dealing with it. *See Hill v. Marion Cnty.*, 238 So. 2d 163, 166 (Fla. 1st DCA 1970) ("[A]n owner of property may testify as to its value, although not qualified as an expert."); *Salvage & Surplus, Inc. v. Weintraub*, 131 So. 2d 515, 516 (Fla. 3d DCA 1961) (stating that a property owner may testify as to value of his or her property based upon "familiarity with the characteristics of

11

the property, knowledge or acquaintance with its uses and purposes, and experience in dealing with it"); *see also Reliance Ins. Co. v. Pro-tech Conditioning & Heating*, 866 So. 2d 700, 701 (Fla. 5th DCA 2003) (noting that a property owner's competence to testify derives not from title, but rather from the fact that ordinarily, an owner knows the property intimately and is familiar with its value.).

By virtue of owning the RV for over three years, having dealt with various service issues with the RV, and the Johnson's previous experience with RV ownership, the Johnsons may testify as to the value of the RV on January 23, 2013.[2] Whether the Johnsons' opinions are accurate is a matter better left for cross examination. *See Meredith v. Hardy*, 554 F.2d 764, 765 (5th Cir. 1977).[3] Thor is therefore not entitled to summary judgment on this ground.[4]

## B. Florida Lemon Law Claim

Under Florida's Lemon Law a manufacturer must conform a motor vehicle to the terms of its written warranty. *See* Fla. Stat. § 681.103(1). The Lemon Law defines a "motor vehicle" as:

> a new vehicle, propelled by power other than muscular power, which is sold in this state to transport persons or property, and *includes a recreational vehicle* . . . but does not include . . . the living facilities of recreational vehicles. "Living facilities of recreational vehicles" are those portions

---

[2]Thor objects to the Johnsons' affidavits (Docs. 28, 29), arguing that the Johnsons' were not disclosed as "experts" with a damage opinion. (Doc. 20 at 17). But as noted under Florida law, a plaintiff's opinion as to damages is not considered expert testimony.

[3]In *Bonner v. City of Pritchard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981.

[4]Thor highlights several opinions for the Court's review which hold that a plaintiff's opinion as to value is insufficient to establish diminished value, including *Fedrick v. Mercedes Benz*, 366 F. Supp. 2d 1190, 1195 (N.D. Ga. 2005), *Ficklin v. Hyundai Motor Am., Inc.*, 611 S.E.2d 732, 733-34 (Ga. Ct. App. 2005), and *Monroe v. Hyundai Motor Am., Inc.*, 606 S.E.2d 894, 896 (Ga. Ct. App. 2004). Each of these cases applies and interprets Georgia law and are inapplicable to the present case.

>designed, used, or maintained primarily as living quarters and include, but are not limited to, the flooring, plumbing system and fixtures, roof air conditioner, furnace, generator, electrical systems other than automotive circuits, the side entrance door, exterior compartments, and windows other than the windshield and driver and front passenger windows.

Fla. Stat. § 681.102(14) (emphasis added).

Thor contends that the slide-out room falls within the living facilities exclusion. (Doc. 20 at 22-23). Florida courts that have addressed this issue agree. *See Coberley v. Thor Indus., Inc.*, 908 So. 2d 486, 490 (Fla. 5th DCA 2005) (concluding that a slide-out room falls "clearly within the definition of living facilities"). The slide-out room by its very nature is intended to increase the space of the living facility of a recreational vehicle. The Johnsons argue that the slide-out room comprises a substantial portion of the side of the RV and therefore affects its structural integrity and should not be considered part of the living facilities. (Doc. 34 at 17). But this argument is unpersuasive for two reasons. First, the statute specifically defines living facilities as "those portions designed, used, or maintained primarily as living quarters" and does not reference the effect of those portions on the structural integrity of the recreational vehicle. And, second, there are several items included in the enumerated list, such as the flooring, exterior compartments, and windows, which, if defective, could affect the structural integrity of a recreational vehicle. It would defy both the plain language of the statute and common sense to conclude that the slide-out room is not part of the RV's living facilities.

Because the slide-out room is part of the RV's living facilities, the alleged defect with the slide-out room is excluded from Florida's Lemon Law. Consequently, Thor is entitled to summary judgment on this claim.

## **CONCLUSION**

Accordingly, it is therefore **ORDERED AND ADJUDGED** that:

1. Defendant Thor Motor Coach, Inc.'s Motion to Exclude Opinion Testimony of Plaintiffs' Putative Expert, Richard Falco (Doc. 18) is DENIED.

2. Defendant Thor Motor Coach, Inc.'s Motion for Summary Final Judgment (Doc. 20) is GRANTED in part and DENIED in part as described herein.

**DONE** and **ORDERED** in Tampa, Florida, this 28th day of March, 2016.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record